HENRY W. SIMONTON *et al. vs.* FRANCIS LORING *et al.*

Cumberland. Decided April 4, 1878.

*Master and servant.*

The servant of the occupants of an upper tenement accidentally left open a faucet, thereby causing the water to overflow and flood the tenement below. *Held*, that the occupants of the upper tenement were liable for the damage thereby done.

ON REPORT from the superior court.

CASE stated in the opinion.

*A. A. Strout & G. F. Holmes*, for the plaintiffs.

*M. M. Butler & C. F. Libby*, for the defendants.

VIRGIN, J. In June, 1875, the plaintiffs with their stock of goods occupied the first floor of the Stewart block, 565 Congress street, Portland, and the defendants the hall in the third story, together with the appurtenances thereto, including a urinal supplied with Sebago water. In the night of June 20, the faucet in the closet regulating the flow of the water into the urinal having been left wide open, and the efflux, from some cause, not being equal to the influx, the water overflowed the bowl and flooded the plaintiffs' store and injured their stock.

The defendants had possession, control and management of the hall and its appurtenances; and if anybody is liable for the injury caused by the overflow, they are; unless the faucet was left open or the efflux obstructed; or, in other words, unless the overflow was caused by some stranger and without the consent of the defendants. *Lowell* v. *Spaulding*, 4 Cush. 277. *Kirby* v. *Boylston Association*, 14 Gray, 249. *Leonard* v. *Storer*, 115 Mass. 86. *Shipley* v. *Fifty Associates*, 101 Mass. 251. S. C. 106 Mass. 194. *Gray* v. *Boston Gas Light Co.*, 114 Mass. 149, 153.

What is the rule regulating the liability of persons having the possession, control and management of tenements supplied with water as this was? The plaintiffs contend, *inter alia*, that the

defendants were bound at their peril absolutely to prevent injury to others by the escape of the water, upon the principles enunciated by the English courts in *Fletcher* v. *Rylands*, 1 Exch. 265. S. C. Ho. L. 330. *Smith* v. *Fletcher*, 7 Exch. 305. *Nichols* v. *Marsland*, L. R. 2 Exch. Div. (C. A.) 1. This doctrine has received a *quasi* approval in *Ball* v. *Nye*, 99 Mass. 582. *Wilson* v. *New Bedford*, 108 Mass. 261, 266. While it has been criticised in *Swett* v. *Cutts*, 50 N. H. 437 ; *Brown* v. *Collins*, 53 N. H. 442 ; and utterly denied in *Losee* v. *Buchanan*, 51 N. Y. 476, 486. Whether the same principles will be applied by this court to similar circumstances we need not stop to inquire until such an occasion presents itself.

The cases holding that such a dangerous thing as fire may be lawfully used on one's premises are too numerous to need citation; and the person using it is only charged with ordinary care in its use. By the ancient common law, the owner of a house on fire was liable to one injured thereby, on the ground that the fire originated through some presumed negligence of the owner, not susceptible of proof. The hardship of this rule was corrected by St. 6 Anne, c. 31. Every person has a right to kindle a fire on his premises for the purposes of husbandry, and the law imposes upon him the exercise of ordinary care, negligence being the gist of the action for an injury occasioned by the spreading of such a fire. *Bachelder* v. *Heagan*, 18 Maine, 32. *Hewey* v. *Nourse*, 54 Maine, 256.

The same may be said in relation to the use of gas. See, among other cases, *Holly* v. *Boston Gas Light Co.*, 8 Gray, 123. *Hunt* v. *Lowell Gas Light Co.*, 1 Allen, 343. Thus it is said in *Holly* v. *Boston Gas Light Co.:* It is the duty of gas companies " to conduct their whole business, in all its branches, and in every particular, with ordinary prudence and care."

The rule of ordinary care affords reasonable freedom in the use, as well as reasonable security in the protection of property. For the degree of care which this rule imposes must be in proportion to the extent of injury which will be likely to result should it prove insufficient. In other words, ordinary care depends wholly upon the particular facts of each case—the degree of caution and

diligence rising, conforming to and being commensurate with the exigencies which call for its exercise. It must be equal to the occasion on which it is to be used, and is always to be judged of according to the subject matter, the force and dangerous nature of the material under one's charge. *Holly* v. *Boston Gas Light Co., supra.*

Negligence, which is the want or absence of ordinary care, seems to have been the gist of all the actions, like the one at bar, which have come under our observation. Shearman and Redf. on Negl., §§ 512, 513, and notes. Thus in *Moore* v. *Goedel,* 34 N. Y. 527, 530, for an injury caused by an overflow of water, the court say : " In such a case, where the occupation and right to use the water fixtures are exclusive, the party is responsible for their proper use and proper care ; and liability attaches on proof that negligence has occurred and damage has ensued."

Applying this principle to the facts as we believe them to be from a careful examination of the testimony, our conclusion is that the plaintiffs are entitled to judgment and should be compensated for their loss. For, although the pipe which supplied the water was only one-third as large as the waste pipe, the amount of water which passed through it at any time depended upon the head and consequent pressure. The plumber testified that " if no cigar-stump, tobacco-quid or other obstruction got into the bowl, with an ordinary pressure of water, it would not run over ; " but " you could get pressure enough to run it over ; " that the greatest pressure came nights, and we might add Saturday nights when all the stores and other places of business were closed. And if the self-acting stop-cock had been put in just before, instead of soon after the time of the overflow, there would have been no occasion for this action.

But, even if ordinary care did not require a self-acting cock, we believe the overflow was caused by the negligence of the janitor. To be sure, he testifies that when he used the urinal Friday night he turned off the water and locked the door ; that he was there again Saturday in the forenoon, when he supposed there was no water running, although he made no particular examination. And, while he may be sincere, we think he was mistaken.

He had the only key to the closet. So far as the testimony discloses, he was the last person to use it, and was the last person who saw it. We cannot escape the conviction that he accidentally left the cock open.

*Judgment for the plaintiffs, for* $520
*and interest from June* 20, 1875.

APPLETON, C. J., WALTON, BARROWS, PETERS and LIBBEY, JJ., concurred.